UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH JOHNSON (#2009-0017910), | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 10 C 0240 |
| | )<br>) Hon. James B. Zagel |
| DR. HART, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, two jail physicians, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that he was denied adequate post-surgical care for gunshot wounds sustained three months prior to his arrest. This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc.*,

*Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## LOCAL RULE 56.1 (N.D. ILL.)

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to Plaintiff Regarding Requirements of Rule 56 and the Applicable Local General Rules" [document no. 55-8], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the plaintiff failed to file a response to the defendants' statement of uncontested facts. Instead, he implicitly accepts the defendants' statement of facts, quibbling with only a few, relatively minor factual details in his opposing brief.

Because the plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. It should additionally be noted that the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence. *See, e.g., Moss v. Morman*, No. 99 C 3571, 2001 WL 1491183, *4 (N.D. Ill. Nov. 26, 2001) (Andersen, J.); *McCarthy v. Zaruba*, No. 05 C 4321, 2007 WL 1455840, *2 (N.D. Ill. May 14, 2007) (Hibbler, J.).

Given the considerations stated above, the court views the defendants' Rule 56.1 statements supported by the record and not rebutted by the plaintiff to be true and uncontested. [In order to meet its obligation to view the record in the light most favorable to the non-movant, the court has supplemented the defendants' statement of facts with additional facts the plaintiff asserted during his deposition]:

## FACTS

The plaintiff is a pretrial detainee at the Cook County Jail. (Defendants' Exhibit B, Deposition of Kenneth Johnson, pp. 10, 14.) Defendants Avery Hart and Marghoob Khan are staff physicians at the jail. (Complaint, p. 3, ¶¶ 6 and 7.)

On December 1, 2008, prior to his arrest, the plaintiff was shot from four to eight times by an unknown individual or individuals. (Plaintiff's Dep., p. 15.) The plaintiff sustained injuries to his arm, legs, and hip. (*Id.*, p. 16.) The plaintiff required "major surgery" for his wounds. (*Ibid.*) Surgical procedures were performed on both December 1,

2008, and December 2, 2008. (*Id.*, p. 18.) The plaintiff received post-surgical care in January and February of 2009. (*Id.*, pp. 21-22.) At the plaintiff's last visit to an outside physician in February, a follow-up appointment to monitor the progress of his recuperation was scheduled for the end of May of 2009, three months later. (*Id.*, pp. 34, 35.) The plaintiff was advised to use crutches as little as possible in the meantime, and to perform gentle exercises to rehabilitate his leg and hip. (*Id.*, p. 34, 36-37.)

The plaintiff was arrested on March 17, 2009. (*Id.*, p. 23.). He was admitted to the Cook County Jail on or about March 19, 2009. (*Id.*, p. 14.) At the time, the plaintiff's condition was "progressing;" however, he was still relying on a crutch to walk. (*Id.*, pp. 23, 35.) The plaintiff was also still taking ibuprofen for pain. (*Id.*, p. 36.) He still also had "drainage" coming from one of his bullet wounds. (*Id.*, pp. 23, 31.)

The plaintiff underwent a medical screening as part of the jail's intake process. (*Id.*, p. 23.) During his evaluation, the plaintiff told [unnamed] intake physicians and correctional officers that he needed crutches and pain medication. (*Id.*, pp. 23, 25.) The plaintiff was given Tylenol III for his pain, and the intake process continued. (*Id.*, p. 32.) The health care provider who performed the intake evaluation said they would have to wait for the plaintiff's medical records to do anything more. (*Ibid.*) The plaintiff was not placed in the medical unit, as he requested. (*Id.*, pp. 32-33.) A few days later, the plaintiff asked for a double mattress, as recommended by a correctional officer on his tier. (*Id.*, p. 38.)

On March 26, 2009, the plaintiff was called back to the health care unit; however, there was no doctor on duty, so he was given Tylenol and sent back to his tier. (*Id.*, p. 40.) He was seen by a physician a day or two later. (*Ibid.*)

On March 30, 2009, the plaintiff saw a Dr. Sims (not a defendant), one of the four doctors who had examined him during the intake evaluation. (*Id.*, pp. 40-41.) Sims discussed the plaintiff's medical needs with him and changed his medications. (*Id.*, p. 41.) Sims also issued the plaintiff referrals for an orthopedic consultation and for physical therapy. (*Id.*, p. 43.)

In April 2009, the plaintiff had a physical therapy session in Cermak Health Services' physical therapy clinic. (Defendants' Exhibit E, Medical Records; Plaintiff's Dep. pp. 44, 46.) "Self exercises" were demonstrated to the plaintiff during the session. (Plaintiff's Dep., pp. 46-47, 85.) The plaintiff still performs these exercises. (*Id.*, p. 46.)

The plaintiff saw medical technicians and physicians on April 20, April 27, April 28, and May 29, 2009. (*Id.*, pp. 47-49, 52-53.) During the visits, the plaintiff's vital signs were taken, his cholesterol and blood sugar levels were tested, and he was prescribed [or re-prescribed] multiple medications. (*Ibid.*)[1]

On June 11, 2009, the plaintiff's wounds were x-rayed and he was issued prescriptions for a double mattress and a cane. (Defendants' Exhibit E, Plaintiff's Medical Record; Plaintiff's Dep., p. 44, 45.) The plaintiff was also directed to continue doing the leg exercises. (*Id.*, p. 57.) The plaintiff still has a double mattress to this day–although he observes that it took almost three months to obtain one and complains that the mattress flattens "like a sponge" when he sleeps on it. (*Id.*, pp. 39-40.)

---

[1]As this case principally concerns the plaintiff's post-surgical care for the gunshot wounds, the court's recitation of the facts largely ignores the plaintiff's medical appointments regarding other ailments.

On June 30, 2009, the plaintiff underwent additional blood tests, more x-rays were taken, and an EKG was taken. (*Id.*, pp. 55-56, 58.) The x-ray results indicating that the plaintiff's bones were healing properly. (*Id.*, p. 57.)

On July 27, 2009, the plaintiff had his first of two or more[2] consultations with defendant Khan. (Plaintiff's Dep., pp. 64-65; Defendants' Exhibit D, Affidavit of Marghoob Khan, ¶ 10; Attachment 1 to Exhibit D, Medical Record.) The primary purpose of the visit was to check the plaintiff's blood pressure and pulse rate. (Khan Affidavit, ¶ 10.) Khan noted in the file that the plaintiff denied at that time experiencing any medical complaints or medical issues. (*Ibid.*)

During the visit, Khan also discussed the plaintiff's medical history, including the fact that the plaintiff had previously undergone surgery to his left femur. (*Ibid.*) At the conclusion of the medical appointment, Khan renewed the plaintiff's prescriptions for Enalpril and Hydrochlothiazide (for high blood pressure), Naprosyn (for pain), and Ranitidine (for heartburn). (*Ibid.*; *see also* Attachment 1 to Affidavit.) Khan scheduled the plaintiff for a follow-up appointment on October 26, 2009. (*Ibid.*)

The plaintiff filed two grievances relating to medical care at the Cook County Jail. (Defendants' Exhibit C, Affidavit of John Mueller, Assistant Administrator for Program Services, ¶ 4.)

---

[2] At his deposition, the plaintiff indicated that he might have seen Khan perhaps five times, although it might have been a Dr. Martinez who met with the plaintiff during at least one of the visits in question to the health care unit. (Plaintiff's Dep., pp. 69-70.) However, the plaintiff points to no medical record to refute Khan's affidavit, and the court was unable to determine from its review of the plaintiff's medical records, *see* Defendants' Exhibit E, which doctors' notes can be attributed to Khan. The court need not "scour the record to locate evidence supporting a party's legal argument." *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008), *quoting Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

The plaintiff filed the first institutional grievance on August 3, 2009. (*Id.*, ¶ 5; Attachment 2 to Defendants' Exhibit C.) Among other matters, the plaintiff sought "therapy, medical treatment and [to be] seen [in] a constitutionally reasonable amount of time concerning my medical pain due to being shot." (*Ibid.*) The plaintiff was seen by a physician the same day he filed his grievance. (Plaintiff's Dep., p. 64.)

The plaintiff received a response to his grievance on December 16, 2009. (Attachment 2 to Defendants' Exhibit C.) The plaintiff's grievance officer informed him that the matter was being referred to the facility's medical director. (*Ibid.*). The plaintiff filed an appeal the same day. (*Ibid.*)

The plaintiff filed a second grievance on December 19, 2009. (Attachment 3 to Defendants' Exhibit C.) The second grievance concerned an infection in the plaintiff's eye. (*Ibid.*) The plaintiff again requested "to be seen by a doctor and provided with medical treatment in a constitutional[ly] reasonable amount of time." (*Ibid.*) On January 13, 2010, the plaintiff was advised that his grievance was being "[r]eferred to Div[ision] Physician." (*Ibid.*)

On January 14, 2010, the court received the plaintiff's federal civil rights complaint. (*See* docket.) The complaint was dated December 16, 2009. (Complaint, Document No. 1, p. 9.) The accompanying application to proceed *in forma pauperis* was dated December 2, 2009, by the plaintiff and certified on December 3, 2009, by his trust fund officer. (Plaintiff's I.F.P. Application, No. 3.)

On January 19, 2010, the plaintiff was treated by defendant Khan for the second [or so] time. (Plaintiff's Dep., p. 70; Khan Affidavit, ¶ 11; Attachment 2 to Khan Affidavit.) Again, the primary purpose of the visit was to check on the plaintiff's high blood pressure.

(Khan Affidavit, ¶ 11.) After evaluating the plaintiff, Khan renewed the plaintiff's prescriptions for high blood pressure and heartburn medications. (*Ibid.*; see also Attachment 2 to Affidavit.) Khan does not recall the plaintiff ever discussing any issues he was experiencing regarding physical therapy or his recovery from gunshot wounds. (Khan Affidavit, ¶ 12.) Khan maintains that if the plaintiff had brought any problems to his attention, the doctor would have attempted to take "corrective actions." (*Ibid.*)

On January 20, 2010, the plaintiff appealed the second grievance. (Attachment 3 to Defendants' Exhibit C.)

On March 11, 2010, the appeals board gave a final denial of the plaintiff's first grievance. (Attachment 2 to Defendants' Exhibit C.) The board advised the plaintiff that "per CHS [presumably, Cermak Health Services], monitoring of this issue is on-going. Self exercises were demonstrated." (*Ibid.*)

On April 7, 2010, the appeals board sustained the second grievance and directed, "CHS, please re-address this issue with the detainee." (*Ibid.*)

The plaintiff filed no other grievances between March 19, 2009, and January 20, 2010. (Defendants' Exhibit C, ¶ 7.)

The plaintiff has been housed in the facility's Division 9 throughout his confinement at the Cook County Jail. (Plaintiff's Dep., p. 10.) At the end of January 2010, defendant Khan was reassigned from Division 9 to Division 5; since that time, he has treated only inmates assigned to Division 5. (Khan Affidavit, ¶¶ 3-5.)

The plaintiff has never met or been treated by defendant Hart, Cermak Health Services' medical director. (Plaintiff's Dep., pp. 80, 84.) The plaintiff is unaware of any policy, custom, or practice coming from Hart that obstructs, discourages, or prevents pretrial

detainees from obtaining medical care. (*Id.*, pp. 81-82.) The plaintiff sues Hart because he believes that the grievances were forwarded to Hart for resolution. (*Id.*, p. 81.)

During the course of his incarceration, the plaintiff has been seen and treated by physicians, physician's assistants, and other health care providers at the jail on numerous occasions for treatment of his various medical complaints. (Plaintiff's Dep., pp. 40, 51-52, 64, 74.) The plaintiff's voluminous medical records reflect a litany of medical services and treatment for diverse medical issues over the course of his confinement at the Cook County Jail. (*See* Defendants' Exhibit E, Medical Records.)

The plaintiff is able to point to no injury as a result of actions or inaction on the part of defendant Khan. (Plaintiff's Dep., pp. 79, 80.) Although Khan allegedly never checked the plaintiff's vital signs, other health care providers did so "every day." (*Id.*, p. 72.) The plaintiff has never had any problems receiving his prescribed medications at the Cook County Jail. (*Id.*, p. 84.) The plaintiff is currently able to walk without a cane. (*Id.*, pp. 55, 85.) He can also take part in such physical activity as playing basketball and jogging. (*Ibid.*)

## ANALYSIS

No material facts are in dispute, and the defendants have established that they are entitled to judgment as a matter of law. The plaintiff's claims must be dismissed because he failed to exhaust administrative remedies before bringing suit. In the alternative, the plaintiff has failed to adduce sufficient evidence to go to a jury regarding his claim that the defendants acted with deliberate indifference.

### I. The Plaintiff Failed to Exhaust Administrative Remedies Prior to Filing Suit

The plaintiff initiated this lawsuit prematurely. Because the plaintiff filed suit while the administrative review process was pending, the court cannot entertain his claims.

The Prison Litigation Reform Act of 1996 [hereinafter, the "PLRA"] contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). Although the plaintiff in this case claims ignorance of grievance procedures, inmates at the Cook County Jail receive a handbook describing basic programs and procedures, and the plaintiff signed a form confirming that he personally had received the handbook. *See* John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill.) (reflecting that the Cook County Jail has an established and publicized grievance procedure).

Exhaustion is a "precondition" to filing suit. *See Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005). "[E]xhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed." *Ford*, 362 F.3d at 398; *Perez v. Wisconsin Dep't of*

*Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999). "[It] is essential to keep the courthouse doors closed until [exhaustion] efforts have run their course." *Ford*, 362 F.3d at 398. Therefore, an inmate's attempt to exhaust available administrative remedies in the midst of litigation does not satisfy the PLRA.

In this case, the plaintiff commenced suit shortly after notifying authorities that he wished to appeal the first grievance (which at the time was not yet denied, but rather forwarded to the health care unit for review), and shortly after launching a second grievance process concerning a second medical complaint. The plaintiff "jumped the gun" by not waiting for the appeal board to render a final decision. *Ford*, 362 F.3d at 398.

The fact that the plaintiff did not receive a response to his first grievance for some four months does not excuse his premature lawsuit. First, in *Ford*, the U.S. Court of Appeals rejected a similar defense by an inmate who waited six months for the Administrative Review Board to make a final decision before filing suit. *See Ford*, 362 F.3d at 400 (holding that the plaintiff "had to stick with that process until its conclusion rather than make a beeline for court just because the administrative officials gave his appeal the time needed to resolve it"). Second, in the case at bar, the plaintiff chose to bring suit after he heard that the matter was being referred to Cermak Health Services for resolution. The plaintiff did not file his federal civil rights action during the four-month time period during which he might reasonably have believed that his grievance was lost, ignored, or in limbo.

In short, because the plaintiff admittedly failed to complete the administrative grievance process before initiating suit, the court lacks discretion to resolve his claim on the merits. *Perez*, 182 F.3d at 535. The complaint is accordingly dismissed pursuant to 42 U.S.C. § 1997e(a).

## II. The Record Does Not Support an Inference of Deliberate Indifference

Ignoring concerns of exhaustion, the plaintiff has failed to make a triable showing that either defendant acted with deliberate indifference to an objectively serious medical need.

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

The court questions whether the plaintiff's perceived need for post-surgical care amounted to a "serious" medical need for purposes of constitutional analysis. A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005); *Edwards v. Snyder*, 478 F.3d 827, 830 -831 (7th Cir. 2007). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Here, the plaintiff had been treated for gunshot wounds sustained over three months prior to his arrest; at the time he was admitted to the Cook County Jail, his injuries were already scarring over, he was taking only ibuprofen for pain, and he had no immediately upcoming medical appointments scheduled with outside doctors when he was arrested.

Nevertheless, the plaintiff contends when he arrived at the jail, at least one of his wounds was still oozing discharge, he was still experiencing considerable pain, and he believed that he needed physical therapy. Therefore, the court will assume for purposes of the summary judgment motion that the plaintiff's medical needs were "serious." The plaintiff's condition therefore meets the objective standard.

However, the plaintiff cannot satisfy the subjective component. To establish a deliberate indifference claim, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011) (Kocoras, J.).

The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Roe*, 631 F.3d at 857; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010), *citing Estelle*, 429 U.S. at 106. Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment."

-14-

*Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996), *quoting Estelle v. Gamble*, 429 U.S. at 97. The plaintiff is not constitutionally entitled to the medication or treatment of his choice. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The plaintiff has not met his burden of production with respect to the quality of the medical care he received.

### A. Defendant Hart Lacked Personal Involvement in the Plaintiff's Medical Care

The plaintiff concedes that he never had any personal contact with defendant Hart and that he is suing Hart solely "due to the fact that he was the Director of Cermak and its medical staff." (Plaintiff's Response to Defendants' Motion for Summary Judgment, at p. 3.) But Hart cannot be held liable in the absence of his direct, personal involvement in the provision of the plaintiff's medical care. *See J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003), *inter alia*. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 129 S. Ct. 1937, 1948 (2009) ("[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). In short, some causal connection or affirmative link

between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

The plaintiff calls attention to the fact that both of his grievances were routed to Cermak's director–presumably, Hart–for investigation and response. Again, however, the plaintiff filed suit without giving Hart the opportunity to resolve the matter. The plaintiff cannot bypass the administrative review process and, at the same time, fault Hart for inaction.

Moreover, an administrative official is generally shielded from liability where, as here, a plaintiff is receiving ongoing care from health care professionals. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act where officials allegedly denied an inmate life-sustaining medication and food). "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Correctional officials may properly rely on the health care staff to assess an inmate's needs and to provide appropriate care and treatment. Hart is entitled to judgment as a matter of law.

### B. Defendant Khan Did Not Act with Deliberate Indifference to the Plaintiff's Serious Medical Needs

Although defendant Khan did have some interaction with the plaintiff, the plaintiff has failed to make a triable showing of deliberate indifference on the part of Khan. Even accepting as true that the plaintiff both (a) had more than two office visits with Khan and (b) at some point expressed his dissatisfaction to Khan with regard to the care and therapy he

was receiving for his gun shot wounds, the record does not support a finding that the plaintiff's medical treatment was so inadequate as to amount to a constitutional violation.

In evaluating Section 1983 medical care cases, the court examines the totality of the medical care provided, and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374–75 (7th Cir. 1997); *Brame v. Dart*, No. 10 C 3441, 2011 WL 3704728, *4 (N.D. Ill. Aug. 22, 2011) (Conlon, J.). A prisoner is constitutionally entitled only to "adequate medical care," not "unqualified access to health care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Medical deliberate indifference claims "operate[] on a sliding scale, balancing the seriousness of the medical need with the . . . scope of the requested treatment." *Ortiz v. City of Chicago*, 656 F.3d 523, 531 (7th Cir. 2011) (evaluating whether police response to arrestee's medical needs was reasonable), quoting *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007) (police denial of medical attention to arrestee who suffered asthma attack while being booked).

In the instant case, the plaintiff was referred to the physical therapy clinic for a session in connection with his recovery for the gunshot wounds, he was given instruction for "self-exercises," he was prescribed pain medication, and he was provided with a crutch and a double mattress [even though he had to wait for the latter]; it must be emphasized that the plaintiff's injuries were three months old when he arrived at the jail. The plaintiff's medical records also reflect frequent visits to the health care unit for his myriad other medical complaints, as well as regular monitoring of his blood pressure and other vital signs. The plaintiff's comprehensive medical treatment belies any inference that defendant Khan–or any

of the other numerous medical professionals who treated the plaintiff–acted with deliberate indifference to his serious medical needs.

The plaintiff's vague, subjective dissatisfaction with Khan is insufficient to present the matter to a jury. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594-595 (7th Cir. 2007), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Neither in his deposition nor in his response to the defendants' motion for summary judgment was the plaintiff able to articulate any concrete deficiency on the part of Dr. Khan. Having reviewed the entire record, the court, in turn, discerns no additional care Khan might have provided. The plaintiff maintains that even when he complained of chest pain, Khan failed to check his vital signs; however, the plaintiff conceded that his vitals were taken "every day" by others. (Plaintiff's Dep., p. 72.) The plaintiff also notes that he was not advised of test results; however, not being apprised of lab results or provided with an explanation of his condition is not the same as being denied actual care. As noted *supra*, the plaintiff was constitutionally entitled to adequate medical treatment, not a chatty and informative physician. Furthermore, Khan cannot be held personally responsible for any deficiencies by intake physicians, the delay in receiving a mattress, or the plaintiff's non-placement in the medical unit.

Moreover, the plaintiff has failed to show that he was injured in any way as a result of any actions or inaction on the part of Khan. The plaintiff cannot complain that physical therapy was denied him: a physical therapist instructed him in "self-exercise," which was apparently deemed satisfactory for his situation. The plaintiff has provided no evidence suggesting that additional one-on-one sessions with a physical therapist were medically warranted. Furthermore, the plaintiff experienced no problems with receiving his pain medication and other meds. The plaintiff also seems to have fully recovered from his gunshot injuries; he is currently able to walk without a cane, exercise, play basketball, and jog. The record is devoid of evidence that Khan's treatment caused any pain, lingering disability, or other harm. The plaintiff has failed to demonstrate that he has a triable claim against defendant Khan.

## CONCLUSION

In sum, no outcome-dispositive facts are in dispute, and the court finds that the defendants are entitled to judgment as a matter of law. This suit must be dismissed because the plaintiff filed suit before finalizing the administrative exhaustion process. In any event, even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that either named defendant acted with deliberate indifference to the plaintiff's serious medical needs.

For the foregoing reasons, the defendants' motion for summary judgment is granted. If the plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for

the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [#53] is granted. The clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

Enter: _____
JAMES B. ZAGEL
United States District Judge

Date: 11-8-2011